INTERNATIONAL MINERALS & METALS CORPORATION *v.* UNITED STATES
(No. 2223).[1]

ADDITIONAL DUTY—INDIRECT UNDERVALUATION.

Spelter was imported from Frankfort, Germany, to Boston, and entered on a pro forma invoice at a unit price c. i. f. Boston, stating the importers' estimate of the nondutiable items, which were to be deducted in order to arrive at the market value in Frankfort. These items were the cost of transportation from Frankfort to Hamburg, the charges incurred in Hamburg, freight from Hamburg to Boston, insurance, and consular fee. Appraisement was made at the unit price c. i. f. Boston stated in the pro forma invoice, subject to the amount of the nondutiable charges which would appear in the consular invoice. The consular was less than the pro forma statement of nondutiable charges, and the appraised value was advanced accordingly. Though indirect, there was undervaluation within the meaning of paragraph I, Section III, tariff act of 1913, and the additional duty provided for by the paragraph was correctly assessed.

. United States Court of Customs Appeals, June 9; 1924.

APPEAL from Board of United States General Appraisers, Abstract 45361.

[Affirmed.]

*Brooks & Brooks (Frederick W. Brooks, jr.,* and *Ernest F. A. Place* of counsel) ·for appellant.

*William W. Hoppin,* Assistant Attorney General (*Edward J. Neary* and *William H. Futrell,* special attorneys, of counsel), for the United States.

[Oral argument December 11, 1923, by Mr. Place and Mr. Neary.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, and BLAND, Associate Judges, HATFIELD, Associate Judge, participating in the decision by agreement of counsel.

MARTIN, Presiding Judge, delivered the opinion of the court:

This case relates to an assessment of "additional duties" under paragraph I, Section III, tariff act of 1913, the relevant provisions of which read as follows:

\* \* \* and if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry \* \* \*. ·

---

[1] T. D. 40264.

The collector held that the present merchandise was dutiable at an ad valorem rate of duty and that the appraised value thereof exceeded the entered value. He, therefore, assessed additional duties upon the entry under the foregoing paragraph. It is conceded that this is ad valorem merchandise, and the only question in the case is whether its appraised value exceeded that declared by the importer in the entry. No testimony was introduced before the board, consequently this appeal must be decided upon the record and the original papers forwarded therewith.

The merchandise consisted of spelter, which was exported from Frankfort, Germany, and was imported into this country at the port of Boston. In the absence of a consular invoice the importer entered the merchandise upon a pro forma invoice and undertook and professed therein to declare its market value at Frankfort at the time of the exportation. This was done, however, in an indirect manner, by declaring the value to be 4½ cents per pound in Boston "c. i. f." The use of this abbreviation (for "cost, insurance, and freight") is analogous to the familiar one of f. o. b., and signified that the stated value included certain nondutiable charges which were to be deducted therefrom in order to work back to the foreign-market value of the merchandise, which would be its dutiable value. In other words, the entry signified that the market value at Frankfort, which would be the dutiable value, was not 4½ cents per pound, but was the remainder which would be left after deducting the nondutiable charges per pound therefrom. This was an indirect method of declaring the foreign-market value, but it was permitted in practice for the sake of convenience and uniformity. Moreover, this procedure would correctly disclose the foreign-market value of the imported merchandise if the entry would correctly state the amount of the nondutiable charges to be deducted from the Boston value. But it is manifest that if the importer should overstate the amount of the deduction it would be equivalent to understating the foreign-market value of the importation. And that is what the importer manifestly did in this case. The nondutiable items in question consisted of the cost of transporting the spelter from Frankfort to Hamburg, the charges incurred in Hamburg, the ocean freight from Hamburg to Boston, the inland and marine insurance, and the consular fee. In the entry the importer stated these items in amounts which aggregated $2,137, and accordingly deducted that amount from the "c. i. f." Boston value, declaring the remainder to be the Frankfort value. It was afterwards conceded that the actual amount of the nondutiable items was only $1,866.20, or $270.80 less than that declared in the entry. Consequently in this indirect manner the importer understated the dutiable value of the merchandise in the sum of $270.80.

It is of course plain that such an indirect undervaluation is condemned by the act quite the same as a direct one.

The circumstance that the undervaluation was made in an entry upon a pro forma invoice is immaterial. Paragraph I, Section III, tariff act of 1913, reads in part as follows:

\* \* \* That all additional duties, penalties, or forfeitures applicable to merchandise entered by a duly certified invoice shall be alike applicable to merchandise entered by a pro forma invoice or statement in the form of an invoice \* \* \*.

Accordingly the fact that the entry was made upon a pro forma invoice in this case did not relieve the importer from the obligation of correctly stating whatever items he undertook to state in the entry. Furthermore, the fact that the market value of the merchandise "c. i. f." Boston was stated in the entry by the pound, to wit, 4⅓ cents per pound, instead of in gross is also immaterial, since the nondutiable items remained to be deducted therefrom in order to ascertain the value per pound of the spelter at Frankfort. In other words a true and correct statement of the sum of the deductible charges was necessary before its true and correct Frankfort value per pound could be ascertained.

It is therefore unmistakable that there was an undervaluation of the imported merchandise made in the entry, and if a liquidation had followed consistently therewith duty would have been assessed upon an insufficient valuation. This seems to dispose of the question concerning the entered value, leaving us only to inquire whether the appraiser appraised the imported merchandise at an advanced value.

It appears from the record and the original papers in the case that the importer filed the entry with the collector on April 26, 1921. The collector thereupon attached to the pro forma invoice Customs Form 6417 on which he designated the packages to be examined and the place of examination, and transmitted the same to the appraiser pursuant to article 563, Customs Regulations, 1915. It then became the duty of the examiner under the supervision and direction of the appraiser, to examine the imported merchandise, and to ascertain and report the foreign-market value thereof together with such a description of the merchandise as to disclose the rate of duty lawfully chargeable thereon. (Art. 1124, Customs Regulations, 1915.)

On May 6, 1921, which was 10 days after the day when the entry was filed with the collector, the examiner made the examination required of him as aforesaid. The record states that, as the charges for freight shown on the pro forma invoice were very large, the importer was questioned regarding them, and he stated that they

were approximate only and the consular invoice would give all charges correctly. A notation to that effect was made by the examiner on the face of the invoice. Subject to the amount of the nondutiable charges which would appear in the consular invoice, the merchandise was appraised at 4⅓ cents per pound c. i. f. Boston. Afterwards the consular invoice disclosed that the correct amount of the nondutiable charges was less in the amount aforesaid than the amount stated in the entry, so that the appraised value was advanced accordingly. Notice of this advance in value was duly sent to the importer, but no appeal to reappraisement was taken. Accordingly the advanced value became the final appraisement of · the merchandise.

Upon the foregoing facts it seems clear that the importer undervalued the merchandise for duty in the entry made upon the pro forma invoice, and that the appraiser advanced the entered value to the higher figures given in the consular invoice. Accordingly the collector was bound to assess additional duties thereon since the appraised value in fact exceeded the entered value of the merchandise. It must be remembered that the tariff act of 1913 did not require a finding of fraud as a basis for the assessment of additional duties; it peremptorily required such an assessment in event the appraised value of imported merchandise exceeded the entered value, even if that result followed from an innocent mistake.

The following extracts from the decision of this court in the case of United States v. Philips Co. (7 Ct. Cust. Appls. 497; T. D. 37110) disclose the identity of the two cases in principle:

The merchandise in this case consists of certain electric-light bulbs, which were dutiable at an undisputed ad valorem rate of duty under the tariff act of October 3, 1913.

The principal market of exportation of the merchandise was Eindhoven, Holland, but entry thereof was made upon invoices which stated the price of the merchandise f. o. b. Rotterdam. In order, therefore, to state the actual market value of the goods at Eindhoven, the importers at entry deducted certain sums from the Rotterdam price aforesaid, upon the claim that those sums represented the nondutiable freight and shipping charges incurred in the transportation of the goods from Eindhoven to Rotterdam. Accordingly the importers in their entry declared the net sum thus ascertained to be the actual market value of the goods at Eindhoven, the principal market of exportation.

The appraiser in passing upon the importation accepted the invoice statement as to the Rotterdam price of the merchandise, but disallowed a portion of the deduction which the importers claimed, as aforesaid, for nondutiable inland freight and shipping charges, and accordingly reported an actual market value in excess of that stated in the entry. Upon an appeal by the importers a single general appraiser also disallowed part of the deductions in question, although less than that disallowed by the local appraiser, and correspondingly increased the actual market value of the goods beyond the value stated in the entry. No appeal was taken from this appraisement.

\* \* \* - \* \* \* \*

It should be remembered that the foreign freight and shipping charges now in question were not ascertained or fixed by the appraiser as a basis for the assessment of duty thereon. These charges, indeed, were conceded to be nondutiable in character, and no duty was in fact ever assessed upon them or any part of them. They entered as mere incidents into the calculation whereby the per se merchandise itself was appraised by the appraiser, and in this particular the appraiser simply followed the method of calculation which the importers themselves introduced in their entry. The entry, as already stated, was based upon an invoice which stated the actual market value of the merchandise f. o. b. Rotterdam, whereas Eindhoven was conceded to be the principal market for such goods in Holland, the country of exportation. Accordingly a convenient method of ascertaining the actual market value of the goods at Eindhoven was simply to deduct from the invoice value aforesaid the amount of the nondutiable freight and shipping charges which were incurred in their transportation from Eindhoven to Rotterdam. This method was first adopted by the importers in their entry and was followed by the appraiser in his appraisement. It was, after all, simply a convenient and practical method of reaching the actual market value of the per se merchandise at Eindhoven, and bore no relation at all to the valuation of dutiable costs or charges such as should be ascertained and fixed by the collector under the rule in the Spingarn case. It may furthermore be assumed that the appraiser would have reached the same result in the appraisement of the merchandise had he inquired directly concerning its value at Eindhoven instead of following the method of calculation adopted by the importers in the entry, and in that case the inland freight and shipping charges which are incidental to the present method of calculation would not have appeared in the record at all.

Consistently with our decision in the foregoing case we affirm the judgment of the board. *Affirmed.*

### DISSENTING OPINION BY BARBER, JUDGE.

I find myself unable to agree with the majority opinion in this case.

The importer stated in his entry, which the customs officers accepted, that the inland charges to Hamburg were *about*—

| | |
|---|---|
| $4 p. t. 1,000 kilos | $1, 218. 00 |
| Ocean freight from Hamburg to Boston at 275 p. t., 1,000 kilos | 837. 40 |
| Insurance *about* | 80. 00 |
| Consul fees | 2. 50 |
| Total | 2, 137. 90 |

The examiner noted on the invoice that the estimated items were approximate and that the consular invoice would show them correctly. They turned out in the aggregate to be $270.80 less than as estimated, two being higher, one the same and one lower.

It is obvious that the importer could not know on a pro forma invoice entry what the exact amount of each item was.

The main opinion holds that the importer was guilty of undervaluation and in effect that Frankfort was the place of foreign-market value. There is nothing in the entry papers or the record that

shows the principal market of the country from which the exportation was made or the foreign-market value of the merchandise.

It was the duty of the appraiser under paragraph K of section 3 of the act of 1913, to appraise the merchandise at its foreign-market value, or if he could not ascertain it, by one of the alternative methods provided in paragraph L of the same section.

There is no pretense or claim that he undertook to proceed under any of the provisions of paragraph L, and in my opinion the appraisment was void as not made in accordance with the statute then in force.

I am unable to agree with the conclusion that this case is ruled by United States v. Philips Co. (7 Ct. Cust. Appls. 497; T. D. 37110). There the place of principal foreign market was agreed to. Here it is neither agreed to nor found by the appraiser. There it was agreed that the appraiser advanced the entered value to make market value; here the appraiser appraised the merchandise at the entered value.

I would reverse the judgment of the Board of General Appraisers on the ground that the appraisal was void as not having been made in accordance with law.

Smith, Judge, concurs in this dissent.